IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03031-M-RJ

NATHAN PIKE,

        Plaintiff,

v.

OFFICER TAMMY LIBBY, et al.,

        Defendants.

ORDER

This cause is before the court on defendants' converted motion for summary judgment. Mot. [D.E. 19]. For the reasons discussed below, the court grants the motion.

Relevant Procedural History:

On February 5, 2024, Nathan Pike ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees [D.E. 2, 8], filed an unverified civil rights complaint, Compl. [D.E. 1] (alleging Tabor C.I. officers used excessive force on Sept. 1, 2023, and seeking unspecified relief).

On June 11, 2024, the court conducted its initial review and allowed the action to proceed against William Owens and Cory Lindsey (collectively, "defendants"). See Order [D.E. 11].

On October 17, 2024, defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Mot. [D.E. 19], with a memorandum and exhibits, see [D.E. 20].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court sent a "Rule 12" letter notifying plaintiff about the motion to dismiss, the consequences of failing to respond, and the response deadline.

On October 30, 2024, plaintiff filed a letter that the court liberally construed as a response to the motion to dismiss. See [D.E. 22] (reiterating his claim that Tabor C.I. officers beat him).

On November 20, 2024, the court, *inter alia*: converted defendants' motion to dismiss to a motion for summary judgment; directed defendants, by December 9, 2024, to supplement their pending motion to further address administrative exhaustion; and allowed plaintiff until December 31, 2024, to respond to defendants' converted motion for summary judgment. Order [D.E. 23]. The court also sent plaintiff new Roseboro notice, informing him about defendants' motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 24].

On December 10, 2024, the court granted defendants' motions seeking an extension of time until December 16, 2024, to supplement their converted motion for summary judgment and allowed plaintiff until January 7, 2025, to file any response. Order [D.E. 27].

On December 16, 2024, defendants responded to the court's November 20, 2024, order. See Defs.' Suppl. Br. [D.E. 32]. Plaintiff, however, has not filed further response to defendant's converted motion for summary judgment and the time to do so has passed.

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

2

(1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## Discussion:

As noted above, the complaint is unverified and, despite receiving adequate Roseboro notice and having an opportunity to do so, plaintiff did not file affidavits or declarations in opposition to defendants' motion for summary judgment. See Celotex, 477 U.S. at 324; cf. Richardson v. Clarke, 52 F.4th 614, 623–24 (4th Cir. 2022); Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021); Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

Defendants argue, *inter alia*, that plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), before filing this action. See Defs.' Mem. [D.E. 20] at 4–11; see also Defs.' Suppl. Br. [D.E. 32] at 1–7.

The PLRA states, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Successful exhaustion of administrative remedies "means using all steps that the

3

agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (citation, alteration, and internal quotation marks omitted).

PLRA administrative exhaustion, however, is mandatory only if the grievance procedure is "available." Ross v. Blake, 578 U.S. 632, 642 (2016) ("Ross"). Grievance procedure is not "available" when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643–44; see also Griffin v. Bryant, 56 F.4th 328, 335–39 (4th Cir. 2022); Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Failure to exhaust administrative remedies is an affirmative defense that defendants generally must plead and prove. See Jones, 549 U.S. at 216–17; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

The North Carolina Department of Adult Correction ("DAC") has a three-step inmate grievance Administrative Remedy Procedure ("ARP"). See Moore, 517 F.3d at 721–22; see also Harris v. Midford, No. 1:10-CV-263-RJC, 2011 WL 1601446, at *2 (W.D.N.C. Apr. 27, 2011) (noting PLRA exhaustion requires North Carolina inmates to complete all three steps of the ARP).

The current ARP first encourages informal resolution. See DAC ARP at § .0301(a), available at https://public.powerdms.com/NCDAC/tree/documents/2145373 (visited Jan. 16, 2025). "Any aggrieved offender in the custody of DAC may submit a paper grievance Form DC-410 at their housing facility." Id. at § .0304(a). Within three days of receipt, a screening officer will review the grievance

4

and decide whether to reject it or accept it for facility response. Id. at § .0305(c). If the screening officer finds the grievance can be considered, the officer may forward it to the staff member who can best provide information or relief ("Step 1"). Id. at § .0305(f). After acceptance of the grievance, the staff responsible for investigation and response provide a formal Step 1 response within 15 days following the screening response. Id. at § .0309(a). If unsatisfied with the Step 1 decision, the inmate may appeal to the Warden ("Step 2"). Id. at § .0309(b). The Warden/designee investigates the grievance, reviews records, and competes the investigation within 20 days after the appeal to Step 2. Id. at § .0309(b)(3). The Warden then completes a Step 2 response to the offender's grievance. Id. at § .0309(b)(4). If unsatisfied with the Warden's decision, the inmate may appeal the grievance to the Inmate Grievance Resolution Board ("IGRB"), as substitute for the Secretary of Adult Correction ("Step 3"). Id. at § .0309(c)(1). The Executive Director of the IGRB or designated IGRB Grievance Examiner ("IGE") reviews all grievances that are assigned to the section. Id. at § .0309(c)(3). The IGE reviews the grievance and investigates. Id. at § .0309(c)(4). If the grievance has been satisfactorily resolved, the IGE will dismiss the grievance. Id. at § .0309(c)(5). If the grievance is still unresolved, "the IGE may resolve the grievance through mediation and communication with all interested parties." Id. at § .0309(c)(6). The IGE decision is forwarded to the offender within 30 days from the date of the Step 2 appeal. Id. at § .0309(c)(7). This IGE Step 3 decision, or a modification by the Secretary of Adult Correction, is the final step of the ARP. Id. at § .0309(c)(9).

Kimberly D. Grande declares, *inter alia*: Grande is the Executive Director of the IGRB; the current ARP is applicable; the ARP establishes a three-step review process for offender grievances and appeals; in the DAC, administrative exhaustion is not complete until the IGRB completes Step 3 review of the grievance appeal and issues an order; and, from January 1, 2023, until the present, plaintiff fully exhausted six grievances. See Defs.' Suppl. Br. Attach., Grande Decl. [D.E. 32-1] at ¶¶ 1–11.

The attached record supports Grande's declaration. See Defs.' Suppl. Br. Attach., Ex. 1(A), [D.E. 32-1] at 4–7 (Jan. 19, 2023, Step-3 resolution of a Dec. 7, 2022, Tabor C.I. grievance seeking transfer); id., Ex. 1(B), [D.E. 32-1] at 8–11 (Jan. 26, 2023, Step-3 resolution of a Jan. 3, 2023 Tabor C.I. grievance requesting medium custody and new case manager); id., Ex. 1(C), [D.E. 32-1] at 12–15 (Mar. 15, 2023, Step-3 resolution of a Jan. 28, 2023, Tabor C.I. grievance seeking to delay by an hour evening lockdown); id., Ex. 1(D), [D.E. 32-1] at 16–19 (June 5, 2023, Step-3 resolution of a May 9, 2023, Tabor C.I. grievance seeking medication refill); id., Ex. 1(E), [D.E. 32-1] at 20–23 (Sept. 19, 2023, Step-3 resolution of an Aug. 28, 2023, Tabor C.I. grievance seeking educational programing completion certificates); id., Ex. 1(F), [D.E. 32-1] at 24–29 (July 5, 2024, Step-3 resolution of a June 10, 2024, Foothills C.I. grievance seeking a job, educational programs, and a new case manager).

Megan Locklear declares, *inter alia*: Locklear is an Administrative Specialist at Tabor C.I. and has made a personal review of the records; all Tabor C.I. inmate grievances are logged in the Correspondence Tracking System ("CTS"), "including ones that do not go all the way to Step 3 of the grievance process"; Locklear also has "access to the Offender Information Screen which lists, for each offender, the correctional institutions to which Plaintiff . . . has been assigned here in North Carolina"; the Offender Information Screen and CTS are records kept by the DAC as part of the regular course of business; the Offender Information Screen reflects plaintiff was incarcerated at Tabor C.I. from December 21, 2021, until January 19, 2024; the CTS printout shows, from January 1, 2023, through June 2024, plaintiff exhausted six grievances through Step 3, whereas eight of his other grievances were either resolved or rejected. See Defs.' Suppl. Br. Attach., Locklear Decl. [D.E. 32-2] at ¶¶1–9.

The attached record also supports Locklear's declaration. See Defs.' Suppl. Br. Attach., Ex. 3, [D.E. 32-3] at 1–2 (Offender Information Screen showing plaintiff's Dec. 21, 2021, to Jan. 19, 2024, incarceration at Tabor C.I.); id., Ex. 4 [D.E. 32-4] at 1 (CTS printout); id., Ex. 4(A), [D.E. 32-4]

at 2–3 (Jan. 30, 2023, screening response rejecting a Jan. 23, 2023, Tabor C.I. grievance as "already resolved"); id., Ex. 4(B), [D.E. 32-4] at 4–5 (Mar. 6, 2023, screening rejection of a Mar. 1, 2023, Tabor C.I. grievance seeking to retrieve a pin number for a tablet because he had another grievance in process that had not yet completed Step 2 review); id., Ex. 4(C), [D.E. 32-4] at 6–7 (Aug. 2, 2023, Step 1 resolution of a July 31, 2023, Tabor C.I. grievance about a program teacher's three-week absence); id., Ex. 4(D), [D.E. 32-4] at 8–10 (Aug. 22, 2023, Step 2 resolution of an Aug. 10, 2023, Tabor C.I. grievance about not receiving a response to his job assignment request); id., Ex. 4(E), [D.E. 32-4] at 11–13 (Mar. 17, 2024, Step 2 resolution of a Feb. 20, 2024, Maury C.I. grievance seeking a new case manager); id., Ex. 4(F), [D.E. 32-4] at 14–15 (May 3, 2024, Step 1 resolution of an Apr. 17, 2024, Foothills C.I. grievance about a nurse's failure to provide medication); id., Ex. 4(G), [D.E. 32-4] at 16–17 (June 5, 2024, screening response rejecting a June 4, 2024, Foothills C.I. grievance alleging multiple incidents); id., Ex. 4(H), [D.E. 32-4] at 18–19 (June 7, 2024, screening response rejecting a June 6, 2024, Foothills C.I. grievance alleging multiple incidents).

This record shows that, although he filed numerous roughly contemporaneous grievances, some of which he successfully exhausted, plaintiff did not file, much less exhaust, a grievance as to the September 1, 2023, incident. The unverified complaint also acknowledges on its face that he did not complete the ARP as to his claims before filing this action. See Compl. [D.E. 1] at 8.

Although plaintiff alleges unspecified persons at Tabor C.I. refused to give him a grievance despite his requests, see id., without more, these bald, conclusory allegations fail to show that the ARP was "unavailable" to him within the meaning of Ross, 578 U.S. at 643–44, and are insufficient to defeat defendants' motion for summary judgment, see Fed. R. Civ. P. 56(e); Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020) ("conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion");

7

see also Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (noting, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him" (citations omitted)); Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (finding, if a defendant shows a prisoner did not use available administrative remedies, the burden "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him"); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (per curiam) (unpublished) (noting a plaintiff bears the burden of showing the unavailability of administrative remedies (citing Moore, 517 F.3d at 725)); cf. Griffin, 56 F.4th at 335–39.

Considering the record evidence and reasonable inferences in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendants have met their burden of showing the absence of a genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies, Celotex, 477 U.S. at 325; see Jones, 549 U.S. at 216–17; Wilcox, 877 F.3d at 167, but, as to the alleged "unavailability" of the ARP, plaintiff fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587 (emphasis and quotation omitted).

Accordingly, defendants are entitled to summary judgment, Anderson, 477 U.S. at 249; see Jones, 549 U.S. at 211; Woodford, 548 U.S. at 85, and the court will dismiss the action without prejudice, see Booth, 532 U.S. at 735; see also Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice" (emphasis original)).

8

<u>Conclusion</u>:

In sum, the court: GRANTS defendants' motion for summary judgment [D.E. 19]; DISMISSES WITHOUT PREJUDICE the action for failure to exhaust administrative remedies; and DIRECTS the clerk to close the case.

SO ORDERED this 21st day of January, 2025.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge